# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
----------------------------------------X
AMY D'ANTONIO

              Plaintiff,                            Index No. 16-00249

    -against-                                     VERIFIED COMPLAINT

LITTLE FLOWER CHILDREN & FAMILY
SERVICES OF NEW YORK and SERENE HENDERSON,
MONROE HALE, DARYL VENEABLE, JENNIFER
NELSON & CRISTINA GAWRELUK (sued in their
individual and official capacities pursuant to New York
Labor Law §740),

              Defendants,
----------------------------------------X

      Plaintiff Amy D'Antonio, by her attorneys SCOTT MICHAEL MISHKIN P.C., complaining of Defendants, alleges as follows:

## PRELIMINARY STATEMENT

      This action arose out of the retaliatory treatment of Plaintiff by the Defendant Little Flower Children & Family Services of New York (hereinafter "Little Flower") and against Defendants Serene Henderson, Monroe Hale, Daryl Veneable, Jennifer Nelson and Cristina Gawrlek for their direct participation in the retaliatory acts against Plaintiff in violation of New York Labor Law §740 (hereinafter "NYLL").

## JURISDICTION

1. The jurisdiction of the Court over this controversy is based upon Defendants' retaliation because Plaintiff "blew the whistle" on Defendants engaging in unlawful activities that violate one or more laws, rules, regulations, policies and/or procedures and create a

substantial and specific danger to the public health or safety.

2. Therefore, the court has jurisdiction over Defendants in this action.

## VENUE

3. The unlawful practices alleged below were committed within the State of New York, County of Suffolk.

4. At the time of the unlawful practices, Plaintiff was a resident of Suffolk County in the State of New York.

5. Little Flower is duly organized, authorized and existing under and by the virtue of the laws of the State of New York, with facilities and offices located in Suffolk County, New York.

6. Therefore, this court is the proper venue.

## PARTIES

7. Plaintiff was an employee of Little Flower since on or about February 2103 as a part-time, and then a full-time psychotherapist until she constructively discharged her position on December 1, 2015.

8. Little Flower is an employer as defined by NYLL.

9. Serene Henderson (hereinafter "Henderson") is a Cottage Supervisor at Little Flower.

10. Henderson has and had the authority to do more than carry out personnel decisions made by others and is thereby individually liable for her retaliation against Plaintiff.

11. Henderson actually participated in the retaliatory conduct against Plaintiff and is thereby individually liable for her retaliatory treatment against Plaintiff under NYLL.

12. Monroe Hale (hereinafter "Hale") is the Assistant Executive Director at Little Flower.

13. Hale has and had the authority to do more than carry out personnel decisions made by others and is thereby individually liable for his retaliation against Plaintiff.

14. Hale actually participated in the retaliatory conduct against Plaintiff and is thereby individually liable for his retaliatory treatment against Plaintiff under NYLL.

15. Daryl Veneable (hereinafter "Veneable") is the Director of the Residential Treatment Center at Little Flower.

16. Veneable has and had the authority to do more than carry out personnel decisions made by others and is thereby individually liable for his retaliation against Plaintiff.

17. Veneable actually participated in the retaliatory conduct against Plaintiff and is thereby individually liable for his retaliatory treatment against Plaintiff under NYLL.

18. Jennifer Nelson (hereinafter "Nelson") is the Director of Mental Health at Little Flower.

19. Nelson has and had the authority to do more than carry out personnel decisions made by others and is thereby individually liable for her retaliation against Plaintiff.

20. Nelson actually participated in the retaliatory conduct against Plaintiff and is thereby individually liable for her retaliatory treatment against Plaintiff under NYLL.

21. Cristina Gawreluk (hereinafter "Gawreluk") is a Clinical Supervisor at Little Flower.

22. Gawreluk has and had the authority to do more than carry out personnel decisions made by others and is thereby individually liable for her retaliation against Plaintiff.

23. Gawreluk actually participated in the retaliatory conduct against Plaintiff and is thereby individually liable for her retaliatory treatment against Plaintiff under NYLL.

## FACTS

24. Plaintiff had been employed by Little Flower as a psychotherapist since February 2013 until December 1, 2015.

25. Plaintiff worked in Little Flower's Residential Treatment Center, in the Mental health Department, treating children from ages 13 through 21.

26. The children at Little Flower typically reside on campus and also attend school on campus as well. Some of the children go home on weekends, and some do not and are in the care of the state Department of Social Services.

27. Plaintiff's direct supervisor was Nelson, the Director of Mental Health. Plaintiff was also supervised by Hale, Veneable, and Gawreluk.

28. Little Flower is a facility that is in business to care for children that have characteristics including being highly traumatized, having poor social skills, being verbally and physically aggressive, and having limited abilities to handle emotions. Some of the children also have developmental disabilities, in addition to mental illness.

29. Little Flower has adopted a Corporate Compliance Plan pursuant to the New York State Office of Medicaid Inspector General ("OMIG"). The OMIG regulations require certain entities to adopt effective compliance plans.

30. Little Flower's Compliance Plan specifies that the agency will adhere to it's adopted Code of Ethics and to conduct business with integrity based on sound ethical and moral standards and to ensure the proper quality of patient care.

31. On or about February 2015, Plaintiff complained to her immediate supervisor, Nelson about several violations of safety provisions and protocol that were taking place at Little Flower and were posing a danger to the staff, patients and public.

4

32. For example, Plaintiff complained that Little Flower was inadequately handling an extremely violent resident, "M", and in fact was causing a danger to others by failing to responsibly manage this particular resident. M threw hot sauce in a staff member's eyes, attempted to gouge his eyes out, sexually harassed and assaulted several people.

33. Little Flower and Nelson did nothing to remedy Plaintiff's complaints.

34. That same week in February 2015, Plaintiff met with Nelson, Veneable and Henderson to discuss the safety violations that Little Flower was neglecting to address.

35. Plaintiff brought up the violent and sexually aggressive actions of M and the fact that Little Flower was ignoring the fact that this facility was not equipped and was inappropriate to properly care for this individual while ensuring the safety of the other patients/children and staff.

36. For instance, there was an absence of proper locks on the doors, and a general lack of supervision of some of the children, which poses a danger of them walking off campus alone.

37. In addition, Plaintiff brought up to her supervisors that because Little Flower is violating proper safety protocol for these children with violent histories, the general public is at risk of these violent children leaving the campus on their own.

38. No action was taken by any of the supervisors at Little Flower to find a more suitable facility for this particular resident nor any other resident that was of too violent a nature to be accommodated at Little Flower. M subsequently attacked staff and significantly injured one who went to the emergency room and filed a police report.

39. Upon information and belief, Little Flower receives funding based on the number of residents it cares for at its facilities.

5

40. After this meeting, on the same day, in retaliation for Plaintiff's complaints and disclosures about safety issues, Henderson directed Plaintiff to handle a resident that was having a violent outburst and who had previously threatened her openly in front of Henderson. Henderson directed Plaintiff to meet with this resident alone, putting Plaintiff in danger.

41. Plaintiff began being referred to as the "Princess of Little Flower" by the staff.

42. In addition, on several occasions after Plaintiff's complaints to management about their safety violations and substandard level of care, when Plaintiff radioed for help during crisis, the staff neglected to respond.

43. From on or about February 2015 ongoing to on or about June 2015, Plaintiff also reported to Little Flower and to Child Protective Services the serious sexual and physical abuse of one of her clients and his sibling by their foster-father.

44. In retaliation, Defendants removed Plaintiff from working with this client so that she would not continue to pursue the matter.

45. On or about February – March 2015, Plaintiff was directed to meet with another highly violent resident (hereinafter "D") by herself on a daily basis.

46. Plaintiff also continually complained to Gawreluk, and Nelson during this time, that D was not being properly cared for and that the staff and other patients were in danger from this violent person.

47. D had made several violent threats of death and rape upon the staff and other residents, but Little Flower failed to adequately handle the situation with him.

48. D actually grabbed Plaintiff and would not let her go, while trying to kiss her. After staff intervened, D stated he was going to rape and kill Plaintiff.

6

49. As a result, Plaintiff felt compelled to call the police and file a report regarding D's homicidal threats towards her.

50. Plaintiff informed Little Flower's Administrator on Duty that she had filed a police report regarding D's threats.

51. On or about March 23, 2015, Plaintiff attended a meeting with Veneable regarding D and his threats against her, and Veneable told Plaintiff to go get a restraining order because there was nothing that Little Flower would do to protect the staff and children residents.

52. On or about March 23, 2015, Plaintiff went to the police station to request an order of protection against D, and received it the next day.

53. Plaintiff notified Little Flower that she had an order of protection against D due to his threats.

54. On or about a month later, Plaintiff learned that Little Flower was holding meetings to discuss allowing D back on campus.

55. On or about April 22, 2015, Plaintiff sent an email to administration to remind them of her order of protection against D, and that she had heard they were considering allowing him back on campus. Plaintiff received no response from Little Flower administration.

56. Plaintiff then spoke to her clinical supervisor, Gawreluk, about her concerns of the way Little Flower was mishandling the situation with D and violating safety guidelines.

57. D had previously threatened to bring weapons on campus and physically assaulted numerous residents and staff.

58. Plaintiff reported that not placing D in a proper facility was a threat to the safety of the children and staff at Little Flower.

59. About nine days earlier, on or about April 13-14, 2015, Plaintiff observed another

therapist, who was a recovering heroin addict, behaving oddly and appearing high on drugs. This co-worker crashed her car while in an empty parking lot.

60. This co-worker has also previously crashed her car while on campus while, upon information and belief, high on drugs.

61. In addition, the co-worker explained to Plaintiff that she carried an injectable anti-opiate drug.

62. Out of concern for the safety of the resident children and the staff, Plaintiff, along with another therapist, Barbara Jacovelli, reported the co-worker's behavior and suspected drug use to Hale.

63. Plaintiff reported to Hale that these repeated incidents of potential drug use are a significant danger for the youth and staff on campus. This woman is responsible for driving the children in her personal vehicle, bi-weekly, to AA meetings and is putting them in danger when she drives under the influence of drugs. She also drives the children around campus.

64. Hale did not respond to Plaintiff's complaints at all until April 23, 2015, which was right after Plaintiff's emailed complaint about Little Flower's mishandling of the situation with resident D. Hale summoned Plaintiff to meet with himself and Nelson.

65. In the meeting Hale did not address Plaintiff's complaints, but rather warned Plaintiff not to speak with anyone in positions lateral or below her about anything that could be damaging to the reputation of the agency. Hale also warned Plaintiff that if Plaintiff did speak with anyone about this, that disciplinary action would be taken against her.

66. Moreover, the therapist that was allegedly using drugs while at work, whom Plaintiff reported to Hale, also gave a child/resident a stuffed bear with a bag of drug residue in it,

8

and administration did nothing about it.

67. On or about June 3, 2015, Plaintiff sent an email to administration complaining again that adequate safety measures were not being taken to protect and care for the residents, and staff, including having locks on doors, safety doors, inspections of the children's belongings and their living spaces, security cameras and adequate lighting around the outside perimeter of the facility. This email was due to ongoing threats and actions taken towards Plaintiff that put her in physical danger.

68. As a result of this complaint, Plaintiff was called into a meeting with Veneable, Henderson and Nelson, wherein they attempted to shift the focus of the lack of safety measures to one of Plaintiff being a weak or an inappropriate therapist.

69. No action was taken to improve the safety conditions at Little Flower as a result of Plaintiff's complaints.

70. On or about June 8, 2015, Nelson approached Plaintiff regarding her complaint from the week prior, and told her that she was being defensive.

71. On or about August 26, 2015, "J", one of Little Flower's residents and a therapy client of Plaintiff's, was found to have pornographic pictures of himself and others on his iPad. J was sending the nude photos of himself to others via the internet. J was a sex offender and had a caseworker assigned to him as well as a probation officer to report to. J also saw a counselor off-campus that specialized in sex offenders. This counselor reported to Plaintiff that J was at the highest level of risk for re-offending and that he required a higher level of care and supervision than Little Flower could give him.

72. Also, when Plaintiff became aware of J's nude internet photos, she spoke with J's probation officer who had advised that she had heard no complaints from Little Flower at

9

all regarding J's behavior. J's probation officer agreed that Little Flower failed to keep her informed of J's actions and that this facility was inadequate for J.

73. In fact, Plaintiff had complained many times to Little Flower administration about J's acts of aggression at Little Flower. There was no follow through at all by Little Flower.

74. On or about August 27, 2015, Plaintiff met with Henderson and other supervisors and informed them that J was sending what amounted to child pornography to adult contacts on the internet, and that these adult contacts could potentially locate him on campus.

75. During this meeting, J's iPad was reviewed and it was discovered that J had been soliciting adults as well as other residents for sex in addition to exchanging nude photos.

76. It was determined at the meeting that, although J would be supervised one on one and was not allowed any electronic devices, he would still remain in the cottage with other residents whom he had previously threatened to assault. J even stated in the meeting that he had no ability to control his sexual impulses.

77. However, Little Flower did not implement or enforce these restrictions, as Plaintiff discovered that J had an iPhone the following week and was continuing the same behaviors.

78. It was determined at the next week's meeting, on or about September 2015, of supervisors and Plaintiff, that Plaintiff was to call CPS to report J's father for allowing him to return to campus with an iPhone.

79. It was actually Little Flower's responsibility to search children when they return to campus for any prohibited items, and this was not done.

80. Plaintiff called CPS, who then directed her to call the New York Justice Center to report Little Flower's lack of supervision over J, which she did.

10

81. Plaintiff then emailed Little Flower administration to inform them that she had made the report to the Justice Center regarding the lack of supervision.

82. In a very unusual and atypical protocol, Plaintiff was directed to sit in on the CPS interview of J. Usually it is the caseworker that sits in on the interview, and not the individual that made the report.

83. During the interview, J became very agitated and threatened "whoever made this report."

84. On September 8, 2015, a follow-up meeting was held with Nelson, Plaintiff and others. At this meeting, J was brought in and again stated how angry he was that a CPS call had been made.

85. It was then that Nelson directed Plaintiff to meet with J, one on one, five days a week to help him "control his impulses." This directive would place Plaintiff in direct daily contact, behind closed doors, with one of the most violent residents in the facility.

86. Intentionally directing Plaintiff to be alone with J every weekday was done out of retaliation for Plaintiff's prior complaints of Little Flower's violations of safety precautions, including ignoring an employee's drug use while working, and for her complaint to the Justice Center regarding Little Flower's lack of supervision of residents, J in particular.

87. Because of the March incident with D, and because Plaintiff's complaints that Little Flower was not taking proper safety precautions were entirely being ignored, Plaintiff became overwhelmed and went out on medical leave on September 9, 2015 for Post-Traumatic Stress Disorder. Plaintiff was diagnosed with PTSD by two doctors.

88. Plaintiff has been trying to receive workman's compensation for this work-related condition, and Little Flower has willfully and intentionally stalled the process by failing

11

to set up necessary interviews of Plaintiff's co-workers.

89. Plaintiff also contacted Little Flower Human Resources to discuss the application for benefits. Karen Basile stated she would get back to Plaintiff, and never did.

90. On or about October 21, 2015, Plaintiff was contacted by the Justice Center in connection with the investigation of the lack of supervision complaint. The investigator indicated that she was never told by Little Flower in her investigation that J had a history of sexual misconduct.

91. The following day, the investigator called Plaintiff back and told her that she had spoken with a male administrator at Little Flower who had denied the events regarding J that Plaintiff had told her about. Specifically, he denied that J had perpetrated several sexual assaults and threats upon children and staff at Little Flower.

92. By denying Plaintiff's reports about J's misconduct and implicating Plaintiff as a liar, Little Flower has potentially damaged Plaintiff's professional career. Plaintiff could lose her license to practice if it is determined that she had filed false reports.

93. As a result, Plaintiff's worker's compensation claim was denied.

94. Finally, because Little Flower refused to initiate any necessary changes to the working protocol at the agency regarding the safety and proper care of the residents, as well as the staff, and due to the added stress this hostile environment was causing her, Plaintiff constructively discharged her position at Little Flower as of December 1, 2015.

## CLAIM OF RETALIATION AFTER COMPLAINTS OF VIOLATIONS PURSUANT TO NYLL §740

95. Plaintiff repeats and reiterates the allegations stated in paragraphs 1 through 91 as if fully

set forth herein.

96. Plaintiff made several complaints to Little Flower management beginning in February 2015 through September 2015 regarding several violations of safety measures and procedures, substandard care of the residents/patients, lack of supervision of a child resident who poses a danger to both himself and others, distribution of child pornography to and from campus and that Little Flower is knowingly and purposely continuing the care of residents/patients that they are unequipped for solely for the extra funding they receive per resident.

97. The safety violations include lack of locks on doors, inadequate lighting around campus, overlooking serious drug use by its employees while at work, failing to safeguard the resident children from other extremely violent and aggressive children and failing to do proper inspections of the children, including their person and belongings when they return to campus after being home.

98. More safety violations that Plaintiff complained of were that Little Flower failed to adequately monitor entrances and exits on campus, including the use of security cameras. Also, there was a failure of Little Flower supervisors to monitor the implementation of "safety plans" for suicidal residents that could result in death or serious injury.

99. Another violation that Plaintiff complained of which poses a threat to the safety of the public is the distribution of child pornography and solicitations for adult sex by a child resident.

100.    Still another violation that Plaintiff complained of/disclosed to Little Flower was that a co-worker was found multiple times appearing to be high on drugs while at work and caring for children.

101. Also, Plaintiff made a complaint against Little Flower to the New York State Justice Center regarding Little Flower's lack of supervision over resident "J."

102. In addition, beginning on or about February 2015 to on or about June 2015, Plaintiff notified Nelson, Veneable, Henderson, and Gawreluk that one of her clients, a child/resident and his sibling, a student at Little Flower, were reporting widespread and horrific sexual and physical abuse in their foster home by their foster-father, Cesar Gonzalez-Mugabaru. Mr. Gonzalez was arrested in January 2016 for multiple incidents of sexual abuse to children and animals.

103. Plaintiff also reported this appalling child abuse to CPS, and made Little Flower aware of the fact that she made this report, as Plaintiff is a state mandated reporter.

104. As a result of Plaintiff's reports, Little Flower did nothing to help the childrens' situation, and, in fact began to exclude Plaintiff from meetings and interviews regarding her client, the child/resident that was being horrendously victimized by his foster father.

105. Not only did Little Flower exclude Plaintiff from meetings regarding her client, they eventually removed the child from Plaintiff's caseload altogether. Little Flower did this to cover up the fact that they neglected to follow proper safety protocol for the children after Plaintiff complained, and to ensure that Plaintiff's role was eliminated with regards to the abuse of this child and his sibling.

106. These actions by Defendants' resulted in the needless continuation of the severe and horrifying abuse of several children and animals by this man, Cesar Gonzalez-Mugabaru, which could have been curtailed many months earlier

107. The violations Plaintiff complained of posed a real threat to the public health and safety in that if the violent children/residents are not adequately supervised, and there are

no locks on the doors, and there are no safety inspections done of the children or their living spaces, then there is a high propensity of these violent offenders to assault and threaten the other residents, or to the general public if the child chooses to walk off campus into the nearby town and has items that can be used as a weapon in their possession.

108. Without proper inspections, the child would also be a potential risk to himself if he has possession of an item he could use to inflict harm on himself.

109. The violation of failing to discipline or otherwise handle the employee that gets high on drugs and then drives the children around poses a danger to the safety of the children she is driving and a danger to the general public when she is driving the children to meetings off campus.

110. The violation of continuing to care for a resident when it is obvious that the child needs to be in a facility with a higher level of restriction also poses a danger to the other residents and staff at the facility, as the extremely violent child is not adequately restrained and/or supervised to safeguard against probable future violent episodes and attacks.

111. Plaintiff has suffered adverse employment acts as a result of her numerous complaints to Little Flower and to New York Justice Center about the procedure and policy violations of Little Flower that caused a danger to the public health and safety.

112. For example, after Plaintiff first complained of safety policy violations, she was excluded from meetings regarding the treatment of her patients, she was derogatively referred to as a "Princess," she was taken off the case of a resident whose foster-father, Cesar Gonzalez-Mugabaru, she had reported to Child Protective Services because the

15

child reported sexual abuse in his home, and she was directed to meet one-on-one with violent residents that had previously assaulted and/or threatened her.

113. Also, during the Justice Center's investigation of the lack of supervision of J, Little Flower administration denied the acts of violence that Plaintiff conveyed regarding J, essentially saying she fabricated a report of a violation.

114. This could be very damaging to Plaintiff's career and her credibility as a social worker, and could cause her to lose her license for false reporting.

115. Another adverse act is Little Flower fought against Plaintiff's claim of worker's compensation income after she went out on leave due to her PTSD due to the attack from D, and Little Flower's treatment of her subsequent to her complaints. Little Flower refused to cooperate with the insurer in a timely manner and her claim was denied.

116. Lastly, Plaintiff has been forced to constructively discharge her position due to the extreme retaliation she has faced at Little Flower. She is now unemployed, and has been prevented from completing the necessary work-hours she needs for her certification as a clinical social worker.

117. These adverse acts would not have occurred but for Plaintiff's complaints of several policy and safety procedure violations against Little Flower.

118. As such, Plaintiff has suffered damages due to Defendants' retaliation against her for reporting several violations of safety protocol and inadequate care to the residents that were a danger to the public health and/or safety.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1. An order or judgment that Plaintiff be awarded compensation for lost wages,

benefits and other remuneration;

    2.    A judgment ordering corrective action to be taken by Defendant to alleviate current and future public safety violations at Defendant;

    3.    Reasonable costs, disbursements, and attorney's fees; and

    4.    For such other and further relief as this Court deems just and proper in this action.

Dated:    Islandia, New York
            March 21, 2016

                      SCOTT MICHAEL MISHKIN, P.C.

                      By:    Kathleen A Tirelli, Esq.
                              One Suffolk Square, Suite 240
                              Islandia, New York 11749
                              Telephone: (631) 234-1154
                              *Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
---------------------------------------------------------------X
AMY D'ANTONIO

                Plaintiff,                Index No. 16-00249

    -against-                             CLIENT VERIFICATION

LITTLE FLOWER CHILDREN & FAMILY
SERVICES OF NEW YORK and SERENE HENDERSON,
MONROE HALE, DARYL VENEABLE, JENNIFER
NELSON & CRISTINA GAWRELUK (sued in their
individual and official capacities pursuant to New York
Labor Law §740),

                Defendants,
---------------------------------------------------------------X

STATE OF NEW YORK    )
                             )ss.:
COUNTY OF SUFFOLK   )

      AMY D'ANTONIO, being duly sworn, says that she is a Plaintiff in the within action, that deponent has read the forgoing Verified Complaint on the 21st day of March 2016, and knows the content thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief; and as to those matters, deponent knows to be true.

                                                    *[signature]*
                                                 Amy D'Antonio

Sworn to me this 21st day

of March, 2016

*[signature]*

Notary Public

> KATHLEEN A TIRELLI
> Notary Public, State of New York
> No. 02TI6306722
> Qualified in Suffolk County
> Commission Expires June 23, 20 18

1