UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
AMY D'ANTONIO,

                         Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                           17-CV-1221 (JS)(SIL)

        -against-

LITTLE FLOWER CHILDREN & FAMILY
SERVICES OF NEW YORK, SERENA
HENDERSON, JENNIFER NELSON, ERIK
ERMENTRAUT, and DARYL VENEABLE,

                         Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:        Kathleen Ann Tirelli, Esq.
                    Scott Michael Mishkin, P.C.
                    One Suffolk Square, Suite 240
                    Islandia, NY 11749

For Defendants:       Jordan Sklar, Esq.
                    Siobhan Amanda Healy, Esq.
                    Babchik & Young, LLP
                    200 East Post Road, 2nd Floor
                    White Plains, NY 10601

SEYBERT, District Judge:

        Plaintiff Amy D'Antonio ("Plaintiff") commenced this

action against Little Flower Children & Family Services of New

York ("Little Flower"), Serena Henderson ("Henderson"), Jennifer

Nelson ("Nelson"), Erik Ermentraut ("Ermentraut"), and Daryl

Veneable ("Veneable" and collectively, "Defendants") on March 3,

2017, alleging claims for hostile work environment and retaliation

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

<u>et</u> <u>seq.</u> ("Title VII"), and New York Executive Law § 290 ("Section

290").[1]  (Compl., Docket Entry 1, at 1.)  Currently pending before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mot., Docket Entry 17.)  For the reasons that follow, Defendants' motion to dismiss is DENIED.

BACKGROUND

I.   Factual Background[2]

Little Flower provides services and housing for children in crisis and individuals with developmental disabilities. (Compl. ¶ 9.)  The individual Defendants held the following positions at Little Flower: (1) Henderson, Cottage Supervisor; (2) Nelson, Director of Mental Health; (3) Ermentraut, Cottage Supervisor; and (4) Veneable, Director of the Residential Treatment Center.  (Compl. ¶¶ 11, 15, 21, 25.)

Plaintiff is a female certified psychotherapist who worked in Little Flower's Residential Treatment Center in Wading River, New York from approximately February 27, 2013 to December 1, 2015.  (Compl. ¶¶ 7-8, 32.)  She began on a part-time basis and transitioned to full-time in March 2014.  (Compl. ¶ 31.)  Plaintiff

---

[1] The individual Defendants have been sued in their individual and official capacities under Section 290.

[2] The facts alleged in the Complaint are presumed to be true for the purposes of this Memorandum and Order.

was a psychotherapist in the Inner Lights program, which was supervised by Ermentraut and Veneable. (Compl. ¶ 33.)

After Plaintiff began working at Little Flower, Ermentraut asked her to spend time with him outside of work, and she agreed. (Compl. ¶¶ 35-36.) However, after they spent time together, Plaintiff decided that she did not want to go out with him again. (Compl. ¶ 36.) Thereafter, Ermentraut repeatedly pressured her to spend time alone with him, and she refused his advances. (Compl. ¶¶ 37-38.) Ermentraut also asked Plaintiff on multiple occasions if he could touch her buttocks. (Compl. ¶ 39.) As a result, Plaintiff became uncomfortable around Ermentraut and tried to minimize her interactions with him, but he became angry with her for rejecting his advances. (Compl. ¶¶ 40-42.)

For example, on one occasion in October 2014, Ermentraut came to her office and asked her to go kayaking with him, and when she declined, he became frustrated with her. (Compl. ¶¶ 43-44.) Eventually, Ermentraut became "belligerent" whenever Plaintiff tried to speak to him, stopped sharing information with her about her clients, and began excluding her from meetings, interventions, and important emails. (Compl. ¶¶ 47-49.) Moreover, Ermentraut "directly questioned [her] intelligence in front of others" and threatened to report her to Nelson, the Director of Mental Health, for "being unreasonable and overdramatic." (Compl. ¶¶ 50-51.) Ermentraut became aggressive and shouted at Plaintiff on numerous

occasions, including one incident during which Plaintiff started to cry. (Compl. ¶¶ 52-53.) In response, Ermentraut removed his shirt and offered it to her. (Compl. ¶ 53.)

Around October 2014, Plaintiff met with Nelson and Veneable to discuss Ermentraut's conduct. (Compl. ¶ 55.) Plaintiff explained that, because she rejected Ermentraut's advances, he was excluding her from meetings and team discussions, which was interfering with her ability to treat her clients. (Compl. ¶¶ 56-58.) Nelson and Veneable failed to take any action, and Plaintiff eventually agreed to have one of her clients reassigned to another psychotherapist to minimize her contact with Ermentraut. (Compl. ¶ 59.) When Plaintiff met again with Nelson, Veneable, and Henderson, a Cottage Supervisor, later that same week, she was told to "toughen up."[3] (Compl. ¶ 60.)

Separately, as a result of threats by some of the children, Plaintiff requested that Little Flower repair certain doors and locks in the facility. (Compl. ¶ 61.) After several male residents threatened her and grabbed her, she sent an email in June 2015 requesting that Little Flower install surveillance

---

[3] Plaintiff avers that this was not the first complaint Little Flower received about Ermentraut's conduct. (Compl. ¶ 45.) She claims that Ermentraut harassed other female employees and that the conduct was reported to Human Resources and Veneable. (Compl. ¶¶ 45-46.)

cameras outside her office.[4]  (Compl. ¶ 63.)  The next day, on June 4, 2015, Veneable, Nelson, and Henderson met with Plaintiff, purportedly to discuss her safety concerns.  (Compl. ¶ 65.) Instead, "the managers chastised and turned the blame on Plaintiff" and "stat[ed] that she was acting and responding inappropriately to the dangerous situations she was confronted with."  (Compl. ¶ 66.)  Plaintiff was also told "to stop taking the threats of violence from the children personally."  (Compl. ¶ 67.)  At that meeting, Plaintiff reiterated her requests to have locks and cameras installed and a door repaired, but no action was taken. (Compl. ¶¶ 69-70.)  It appears that during the meeting, Ermentraut's conduct was also discussed, and Veneable asked her "if she even knew the difference between sexual harassment and poor boundaries."  (Compl. ¶ 68.)  Several days after the meeting, Veneable told Plaintiff that she was "being defensive" about the harassment by Ermentraut and the incidents with residents.  (Compl. ¶ 71.)

According to Plaintiff, after she made these complaints, "her physical safety was completely disregarded by Little Flower." (Compl. ¶ 73.)  For example, despite her requests for additional safety measures, Nelson directed her to meet one-on-one with a

_____

[4] Plaintiff alleges that other psychotherapists already had cameras outside their offices.  (Compl. ¶ 64.)

particularly violent resident five times a week. (Compl. ¶ 74.)
Later, she received an order of protection against that resident.
(Compl. ¶ 75.) In November 2016, as retaliation for her complaints
and for filing a charge with the Equal Employment Opportunity
Commission ("EEOC"), Defendants reported to the New York State
Justice Center that Plaintiff had engaged in sexual misconduct.
(Compl. ¶ 85.) The allegations were determined to be unfounded in
January 2017. (Compl. ¶ 87.)

Due to the hostile work environment at Little Flower,
Plaintiff took medical leave beginning on September 9, 2015 and
was subsequently diagnosed with Post-Traumatic Stress Disorder.
(Compl. ¶¶ 76-77.) During her leave, she applied for worker's
compensation benefits. (Compl. ¶ 78.) However, Little Flower
refused to cooperate and provide the necessary information for her
claim, and as a result, she was forced to resign in December 2015.
(Compl. ¶ 79.) Since the constructive discharge, Plaintiff has
been unable to find a full-time position, due in part to the
symptoms of Post-Traumatic Stress Disorder that began during her
time at Little Flower. (Compl. ¶ 80.) She seeks compensation for
lost wages and benefits, medical costs, emotional distress,
stress, and anxiety. (Compl. ¶¶ 81-84, 88.)

II. <u>Procedural History</u>

As discussed, Plaintiff filed her Complaint on March 3,
2017, asserting the following claims: (1) sexual harassment and

hostile work environment against Little Flower under Title VII, (Compl. ¶¶ 91-102); (2) retaliation against Little Flower under Title VII, (Compl. ¶¶ 103-23); (3) sexual harassment and hostile work environment against Little Flower under Section 290, (Compl. ¶¶ 124-31); (4) sexual harassment against Ermentraut under Section 290, (Compl. ¶¶ 132-41); (5) retaliation against Little Flower under Section 290, (Compl. ¶¶ 142-59); and (6) retaliation against Henderson, Nelson, and Veneable under Section 290 (Compl. ¶¶ 160-74). On August 10, 2017, Defendants moved to dismiss the Complaint for failure to state a claim. (See Defs.' Mot.) Plaintiff opposed the motion on September 8, 2017, and Defendants filed a reply in further support of their motion on September 25, 2017. (Pl.'s Opp., Docket Entry 20; Defs.' Reply, Docket Entry 21.)

Relevant here, Plaintiff previously filed an action in Supreme Court, Suffolk County (the "State Court Action"), alleging that Little Flower, Henderson, Veneable, and Nelson, inter alia, retaliated against her in violation of New York Labor Law Section 740 ("Section 740"). (Sec. 740 Compl., Tirelli Aff., Ex. B, Docket Entry 20-3.)

## DISCUSSION

I.  Legal Standard

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although the Court must accept all allegations in the Complaint as true, this tenet is "inapplicable to legal conclusions." Id. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

In deciding a motion to dismiss, the Court is generally confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, the Court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that,

although not incorporated by reference, are integral to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citation omitted); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (observing that a document is "integral" if the complaint "relies heavily upon its terms and effect") (internal quotation marks and citation omitted).

## II. New York Labor Law Section 740's Election of Remedies

The parties dispute whether Section 740's election of remedies provision bars Plaintiff from pursuing her claims in this action.

### A. Section 740

Section 740 protects whistleblowers by prohibiting employers from taking any "retaliatory personnel action[5] against an employee because such employee does any of the following:

> (a)  discloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud;
> (b)  provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any

---

[5] Retaliatory personnel action is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.Y. LAB. LAW § 740(1)(e).

such violation of a law, rule or regulation by
such employer; or
(c) objects to, or refuses to participate in
any such activity, policy or practice in
violation of a law, rule or regulation.

N.Y. LAB. LAW § 740(2).

Section 740 specifies that "[n]othing in this section
shall be deemed to diminish the rights, privileges, or remedies of
any employee under any other law or regulation or under any
collective bargaining agreement or employment contract"; however,
immediately afterward, the statute contains what has been
characterized as an election of remedies clause, stating that
"institution of an action in accordance with this section shall be
deemed a waiver of the rights and remedies available under any
other contract, collective bargaining agreement, law, rule or
regulation or under the common law."[6]  N.Y. LAB. LAW § 740(7).  As
the Second Circuit observed, "the two clauses of [S]ection 740(7)
would seem potentially to contradict each other."  Reddington v.
Staten Island Univ. Hosp., 511 F.3d 126, 134 (2d Cir. 2007).
Specifically, while the first clause appears to preserve a
whistleblower's legal and contractual rights, the second clause
states that once a whistleblower has instituted a Section 740
action, any other potential claims are waived.  See Collette v.

---

[6] The phrase "'law, rule or regulation' includes any duly enacted
statute or ordinance or any rule or regulation promulgated
pursuant to any federal state or local statute or ordinance."
N.Y. LAB. LAW § 740(1)(c).

10

St. Luke's Roosevelt Hosp., 132 F. Supp. 2d 256, 262-63 (S.D.N.Y. 2001) ("On a plain reading of Clause Two, New York's whistleblower regime not only diminishes other rights, but for employees who seek its shelter, it eviscerates them."). As a result of this ambiguity, courts have struggled to define the scope of the waiver. See Reddington, 511 F.3d at 134 ("[C]ourts have adopted differing and sometimes contradictory limiting constructions of this waiver."); Barker v. Peconic Landing at Southold, Inc., 885 F. Supp. 2d 564, 568 (E.D.N.Y. 2012) ("[T]he proper scope of the waiver has been the subject of a variety of views.").

Several federal district courts have followed the approach of Judge Lynch in Collette v. St. Luke's Roosevelt Hospital. In Collette, based on the text of Section 740, the legislative history, and practice commentaries, Judge Lynch held that the election of remedies provision "applies only to rights and remedies concerning whistleblowing as defined in [Section 740]." Collette, 132 F. Supp. 2d at 274. Applying this construction, Judge Lynch found that the plaintiff's retaliation and discrimination claims under Title VII, state, and local law were not waived after she instituted an action under Section 740 because the retaliation claims were based on "separate facts" and sought "to protect a different legal interest[ ] than the one asserted in [plaintiff's] whistleblower complaint." Id. He reasoned that Section 740 has a different purpose than federal,

state, and local anti-discrimination statutes.  Id. at 267.  For example, Section 740 seeks "to promote the public interest in disclosure of violations of law that present a substantial and specific danger to the public health and safety by prohibiting employers from retaliating against employees who reveal such violations," while anti-discrimination statutes prohibit discrimination based on personal characteristics, including race and gender.  Id. (internal quotations marks and citation omitted). Finally, Judge Lynch observed that a broader construction of the provision would deter whistleblowers from reporting violations of law, id. at 271 ("[R]equiring the employee, as the price of asserting whistleblower protection, to waive any rights he might have under independent causes of action (such as battery, or defamation, or sexual harassment, or employment discrimination) that may have arisen from the same course of employer conduct as the retaliatory firing, will create a disincentive to invoking [Section 740's] protection, thus in turn deterring the very whistleblowing conduct that [Section 740] intends to encourage."), and that interpreting the provision to require a waiver of federal claims would potentially violate the Constitution, id. at 265 ("[A]n effort by New York to condition a state law right on the waiver of arguably unrelated federal rights would raise serious constitutional questions.").

To determine whether claims are waived, the district courts that follow the Collette approach examine whether the subsequent claims address wrongs or interests separate and independent from the whistleblowing claim. See Conte v. Bergeson, No. 13-CV-6629, 2017 WL 4417720, at *6-7 (E.D.N.Y. Aug. 9, 2017), R&R adopted, 2017 WL 4417650 (E.D.N.Y. Sept. 30, 2017) (holding that First Amendment retaliation claim was not waived pursuant to Section 740's election of remedies clause); Wooding v. Winthrop Univ. Hosp., No. 16-CV-4477, 2017 WL 2559942, at *8-9 (E.D.N.Y. Jun. 12, 2017) (adopting Collette's reasoning and holding that discrimination, hostile work environment, and retaliation claims under Title VII, 42 U.S.C. § 1981, and state law were not barred); Menghini v. Neurological Surgery, P.C., No. 15-CV-3534, 2016 WL 3034482, at *3 (E.D.N.Y. May 24, 2016) (following Collette and finding that discrimination and retaliation claims were not barred by election of remedies provision); Catapano-Fox v. City of N.Y., No. 14-CV-8036, 2015 WL 3630725, at *8-9 (S.D.N.Y. Jun. 11, 2015) (holding that claims under Title VII, state, and local law were not waived pursuant to Section 740's election of remedies provision); Magnotti v. Crossroads Healthcare Mgmt., LLC, 126 F. Supp. 3d 301, 315 (E.D.N.Y. 2015) (following Collette and holding that discrimination and contract claims were not waived because they were "brought pursuant to laws with entirely different protective purposes"); Cabrera v. Fresh Direct, LLC, No. 12-CV-

6200, 2013 WL 4525659, at *2-3 (E.D.N.Y. Aug. 27, 2013) (allowing plaintiff to add Section 740 claim because its addition did not waive gender and disability discrimination claims under state and local law); Barker, 885 F. Supp. 2d 564, 569 (explaining that "the issue is whether [p]laintiff's disability discrimination claims protect against the same wrongs that Section 740 prohibits" and holding that discrimination and retaliation claims under Section 290 and the Americans with Disabilities Act were not waived). Further, under Collette and its progeny, a plaintiff may pursue discrimination and retaliation claims after instituting a Section 740 claim even if the claims have "overlapping facts" or are based on the "same underlying retaliatory action." Cabrera, 2013 WL 4525659, at *2.

Alternatively, several district courts have held that Section 740's waiver clause does not waive any federal claim-- regardless of the relationship between the federal claim and the whistleblowing claim--because waiver of such claims would violate the Constitution. See Humphrey v. Rav Investigative & Sec. Servs. Ltd., 169 F. Supp. 3d 489, 501 (S.D.N.Y. 2016) ("[T]he majority of district courts in this Circuit, citing the constitutional concerns raised by a construction that requires the automatic waiver of a plaintiff's federal rights, . . . have construed the provision as not barring claims under federal law."); Malanga v. NYU Langone Med. Ctr., No. 14-CV-9681, 2015 WL 7019819, at *3

(S.D.N.Y. Nov. 12, 2015) (holding that a retaliation claim under the False Claims Act was not barred because interpreting Section 740 to require waiver of federal claims would violate the Supremacy Clause); Hettler v. Entergy Enters., Inc., 15 F. Supp. 3d 447, 453 (S.D.N.Y. 2014) (holding that plaintiff's claim under the Family Medical Leave Act was not waived by instituting an action under Section 740).

Interpretation of the election of remedies clause by New York state courts is inconsistent.  Several have interpreted the election of remedies provision broadly and determined that state law claims related to the same retaliatory action are waived.  See Bordan v. N. Shore Univ. Hosp., 275 A.D.2d 335, 336, 712 N.Y.S.2d 155, 156 (2d Dep't 2000) (affirming dismissal of breach of contract claim against employer because it "arose from the Labor Law § 740 cause of action," but holding that tortious interference claim against co-worker could proceed as that claim was "separate and independent from the Labor Law § 740 claim"); Charite v. Duane Reade, Inc., 120 A.D.3d 1378, 1378, 993 N.Y.S.2d 138, 138 (2d Dep't 2014) ("The waiver applies to causes of action arising out of or relating to the same underlying claim of retaliation."); Pipia v. Nassau Cty., 34 A.D.3d 664, 667, 826 N.Y.S.2d 318, 320 (2d Dep't 2006) ("The mere commencement of an action under Labor Law § 740(4) thus acts as an election of remedies, waiving other causes of action relating to the alleged retaliatory discharge."); Garner v.

China Nat. Gas, Inc., 71 A.D.3d 825, 827, 898 N.Y.S.2d 49, 51 (2d Dep't 2010) ("Since the plaintiff asserted causes of action pursuant to Labor Law § 740, he waived other causes of action relating to the allegedly retaliatory action.") (internal quotation marks, citation, and alteration omitted); Feinman v. Morgan Stanley Dean Witter, 193 Misc. 2d 496, 497, 752 N.Y.S.2d 229, 231 (N.Y. Sup. Ct. 2002) (finding that Section 740(7) "bars claims which arise out of the same facts as give rise to the claim brought under [S]ection 740(2)" and dismissing age discrimination claim under state law). However, recent decisions construe the provision more narrowly and in a manner similar to federal district courts. See Demir v. Sandoz Inc., 155 A.D.3d 464, 466, 65 N.Y.S.3d 9, 12 (1st Dep't 2017) ("Labor Law § 740(7), the election-of-remedies provision, does not waive plaintiff's claim of discrimination under the New York State Human Rights Law . . . because, in alleging discrimination on account of plaintiff's gender, national origin, and religion, plaintiff does not seek the same rights and remedies as she does in connection with her whistleblowing claim, notwithstanding the fact that both claims allege that she was wrongfully terminated.") (internal quotation marks and citations omitted); Sciddurlo v. Fin. Indus. Reg. Auth., 144 A.D.3d 1126, 1127, 42 N.Y.S.3d 321, 322 (2d Dep't 2016) ("[T]he waiver provision of Labor Law § 740(7) does not bar the plaintiff's age discrimination claims in this action."); Seung Won Lee v. Woori

Bank, N.Y. Agency, 131 A.D.3d 273, 278, 14 N.Y.S.3d 359, 362 (1st Dep't 2015) (holding that negligence and sexual harassment claims were not waived because they "concern[ed] injury sustained as a result of the reported misconduct, not simply the statutorily protected loss of employment as a consequence of complaining to management about such misconduct"); Gregorian v. N.Y. Life Ins. Co., 90 A.D.3d 837 838-39, 935 N.Y.S.2d 120, 121 (2d Dep't 2011) ("[T]he Supreme Court properly determined that the plaintiff's age discrimination causes of action are not barred by the election of remedies provision of Labor Law § 740(7).").

B.  The Parties' Arguments

Defendants argue that the Court should dismiss the Complaint because Plaintiff's assertion of a Section 740 claim bars her from pursuing other claims related to her employment. (Defs.' Br., Docket Entry 19, at 3.)  Defendants acknowledge that New York state courts have interpreted the scope of the Section 740 waiver differently from district courts in this Circuit, but urge the Court to follow the approach of the state courts based on "principles of federalism."  (Defs.' Br. at 3-5.)  Additionally, they contend that Plaintiff's claims in this action and the State Court Action are substantially similar because both complaints allege that she was "treated improperly at Little Flower and ultimately terminated."  (Defs.' Br. at 7.)  Alternatively, Defendants maintain that the narrower reading of Section 740's

election of remedies provision still supports dismissal of the Complaint because Title VII and Section 290 protect the same underlying interests as Section 740.  (Defs.' Br. at 7-9.)

Plaintiff advocates for the narrow reading of the waiver clause adopted by the majority of district courts in this Circuit. (Pl.'s Opp. at 4.)  Plaintiff maintains that the claims asserted in this action and the State Court Action involve different harms and "seek to vindicate rights completely separate from each other." (Pl.'s Opp. at 1, 8.)  Moreover, Plaintiff argues that dismissing her federal claims on this basis would violate the Supremacy Clause of the Constitution.  (Pl.'s Opp. at 9-10.)

In response, Defendants argue that the claims in both actions, at their core, seek to vindicate Plaintiff's "right to be free from harassment or [supposed] danger," and because the claims' share a common purpose, no federal right would be forfeited if the Complaint was dismissed on waiver grounds.  (Defs.' Reply at 2-3 (alteration in original).)

C. Application

This Court is persuaded by Judge Lynch's reasoning in Collette, and based on the facts presented in this case, holds that Plaintiff's hostile work environment and retaliation claims under Title VII and Section 290 are not barred by Section 740's election of remedies provision.  In this action, Plaintiff claims that she was subjected to sexual harassment that created a hostile

18

work environment and retaliated against for reporting the harassment. She also made complaints about safety conditions at the facility, which are alleged in greater detail in the complaint in the State Court Action. However, her complaint in the State Court Action makes no mention of sexual harassment. Additionally, federal and state anti-discrimination statutes were enacted to protect different interests than Section 740. See Barker, 885 F. Supp. 2d at 569 ("[T]he issue is whether Plaintiff's disability discrimination claims protect against the same wrongs that Section 740 prohibits."). Title VII and Section 290 seek to prevent discrimination on the basis of personal characteristics, while Section 740 is "aimed at protecting employees who report violations of law that present a danger to public health or safety." Cabrera, 2013 WL 4525659, at *3 (internal quotations marks and citation omitted); see also Barker, 885 F. Supp. 2d at 569 (discussing purposes behind Section 290). Thus, Plaintiff's claims in this action are not waived because they are based on "separate facts" and involve a "different legal interest"--to be protected from sexual harassment and retaliation in the workplace--than her Section 740 claim. Collette, 132 F. Supp. 2d at 274; see also Magnotti, 126 F. Supp. 3d at 315 (determining that discrimination claims were not waived since they sought to "vindicate rights completely separate from those sought to be protected by Section 740") (internal quotations marks and citation omitted); Wooding,

19

2017 WL 2559942, at *8-9 (holding that claims under Title VII and Section 290 were not waived by instituting a Section 740 claim). Defendants' generalizations about the rights at stake in both actions--that, for example, both actions seek to vindicate Plaintiff's "right to be free from harassment or [supposed] danger"--are unconvincing. (Defs.' Reply at 2-3 (alteration in original).)

To be sure, the facts relevant to Plaintiff's hostile work environment and retaliation claims and the Section 740 claim do overlap, and both complaints allege that she was constructively discharged from her position. However, a plaintiff may bring "legitimately independent claims not related to whistleblowing even if the claims have overlapping facts, such as the same underlying retaliatory action."[7] Cabrera, 2013 WL 4525659, at *2

---

[7] In Nadkarni v. North Shore-Long Island Jewish Health System, No. 02-CV-5872, 2003 WL 24243918 (E.D.N.Y. July 31, 2003), this Court dismissed the plaintiff's claims under the Americans with Disabilities Act and Section 290 because the allegations underlying the discrimination claims and the Section 740 claim were identical. Nadkarni, 2003 WL 24243918, at *6. Additionally, in that case, the plaintiff failed to state a claim for retaliation because plaintiff's disability was the result of the alleged retaliation--not the cause of the retaliation. See id. ("This Court . . . can find no other way to construe the complaint than to read that Plaintiff was rendered disabled by the manner in which she was allegedly treated after, and as a result of, her complaints."). Here, the sexual harassment and retaliation claims are based on completely separate facts from the Section 740 claim. Further, to the extent the Court relied on lower state court decisions in Nadkarni, several recent decisions from the Appellate Division

(internal quotation marks and citation omitted); see also Hettler, 15 F. Supp. 3d at 453 ("Although plaintiff's FMLA retaliation claims and Section 740 claim are based on many, but not all, of the same alleged retaliatory acts--or the same course of conduct--that is not enough to find waiver.") (internal quotation marks omitted).

Therefore, the Court declines to dismiss the Complaint on waiver grounds.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 17) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March __19__, 2018
           Central Islip, New York

---

have departed from the broader construction of Section 740's election of remedies provision.  (See supra 16-17.)